[No. 31-40526-2.    Division Two.    December 30, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. ANNETTE JOHNSON *et al., Appellants.*

*Jack E. Tanner*, for appellants.

*Charles O. Carroll, Prosecuting Attorney*, and *Paul M. Acheson, Deputy*, for respondent.

ARMSTRONG, C. J.—This is an appeal by defendants, Annette Johnson, Denise Williams, Janice Ruffin and Tina Minix, who were jointly tried and convicted of grand larceny. A jury was waived and they were tried by the court.

The complaining witness, Antonio Parinas, had arrived in Seattle the day before the crime with his earnings as an Alaska cannery worker in his pockets. He wore two pair of trousers. In the inner pants he carried a wallet with over $1,000 which was secured by a safety pin on the pocket. In the outer pants he carried approximately $100.

On December 5, 1967, he was approached by two women on the street who offered to engage in an act of prostitu-

tion. He clearly identified them as Annette Johnson and Tina Minix. Parinas agreed to their offer and went with the two women to a hotel room selected by them. The three of them lay on the bed where the women hugged and kissed him. He asked one to leave the room. Both left. Two other women whom he identified as Denise Williams and Janice Ruffin then came into the room. Parinas explained that he already had a date and could not have a date with them. Annette Johnson and Tina Minix then returned and all four of them attacked him. He was beaten, severely bitten, kicked, and the inner trouser pocket containing his wallet and over $1,000 was ripped.

The women fled from the room and he pursued them. Two women ran to the front door of the hotel and the other two to the side door. He caught three of them endeavoring to enter a cab; a further altercation occurred and he shouted "Help, police." The police arrived and took Annette Johnson, Denise Williams, Janice Ruffin and Parinas to the police station. Tina Minix was later arrested at the residence she shared with the other three women. The billfold was later found, but the money was never recovered. Parinas made a positive identification of the women and explained his knowledge in the following testimony:

> Q. Do you know any of these girls other than from that one time that you met them? A. Well, I know these girls, but I never tried to mix up with them before. Q. And what was the extent of your knowledge of the girls? What was your—How did you know these girls? A. Well, they used to go with my friends in the hotel, sir. . . . A. Did one girl get away, one of the girls get away? A. Yes, sir. Tina get away.

When asked about how he knew the name of Tina Minix, Parinas said, "I heard some of the girls on the sidewalk calling her Tina Minix."

At the beginning of the trial defendants moved to waive a jury and to exclude witnesses from the courtroom. The trial judge heard the motions in the order in which they were made. It first had the defendants identify themselves in order to ascertain that they fully understood their right

to a jury trial and their waiver thereof. One or two witnesses, not identified in the record, were in the courtroom at that time. The witnesses were then excluded. No objection to the court's order of handling the motions was made at that time.

Over objection, the court allowed the state to reopen its case, after the state and defendants had rested, in order to clarify identification of the defendants by presenting evidence relative to the lineup identification which took place on the day of the crime.

After reopening, Parinas was shown a photograph of six women in a lineup. He stated that he remembered only five women in the lineup. He acknowledged that the four defendants were portrayed in the photograph and that all four were present in the lineup. Defendants objected to introduction of the photograph because Parinas could not remember the number of women included in the picture. No objection was made to the fairness of the lineup which was attended by counsel for defendants.

Defendants make five assignments of error. Their first contention is that the state did not prove each of the elements of grand larceny against each of the defendants. The primary thrust of this contention is that the complaining witness was not sure which, if any, of the women took his wallet.

In essence, larceny consists of the unlawful taking of property of another with the intent to deprive or defraud the owner thereof. *State v. Harrell*, 68 Wn.2d 44, 411 P.2d 407 (1966). To constitute grand larceny the relevant portions of RCW 9.54.090 state that it must be property of value taken from the person of another or property of value greater than $75 taken in any manner whatever.

The evidence in the record clearly supports the trial court's finding that the four defendants stole from the person of the complaining witness his wallet containing in excess of $1,000. The fact that the wallet was removed by one of the defendants, but that the complaining witness had only a suspicion as to which of them took it, does not

derogate from the evidence showing that all four were actively involved in the theft. All four were in the room with the complaining witness when it was taken, all four were involved in his physical abuse, and all four fled the room. The trial court rightly found that all of the defendants were principals within the definition of RCW 9.01.030 which includes "Every person concerned in the commission of a felony, . . . whether he directly commits the act constituting the offense, or aids or abets in its commission," and directs that such person shall be proceeded against and punished as a principal.

A fact situation in point is found in *Vigil v. People,* 161 Colo. 224, 227, 421 P.2d 120 (1966). The complaining witness, while with the defendant and two others, was struck on the head and relieved of his watch and currency. Defendant contended that he could not be held liable because there was no direct evidence that he "personally, actually, and physically" took the victim's property. The Colorado Supreme Court denied this contention, stating:

> It is not necessary under such circumstances to prove actual possession of stolen property in one or another of the participants in such a joint venture. The act of one becomes the act of all; the act of all, the act of one.

We agree with this statement. For an analogous Washington case *see State v. Nichols,* 148 Wash. 412, 269 P. 337 (1928). The trial court was correct in its determination that the elements of the offense were established as to each of the defendants.

Defendants claim that they were not properly identified at the trial. The desk clerk at the hotel where the women took Parinas for the act of prostitution, identified Tina Minix as one of the women who was in the hotel that day; however, he then identified two women other than the defendants. He also stated that he was not too certain of his identification due to the period of time. It is undisputed in the record that the complaining witness knew all of them and his identification was positive and unwavering at all times during the trial.

There is no merit in defendants' contention that the lineup photograph should have been excluded because Parinas recalled only five instead of six women in the lineup. The record shows that the complaining witness' identification of the four defendants was again positive and unwavering. He stated that all four defendants were present in the lineup and all four were portrayed in the photograph.

■ We find no error by the trial court, unfairness, or denial of due process of law in the reidentification of the defendants by the complaining witness through use of the lineup photograph. It is obvious that it was requested by the court merely to test the identification of the defendants at the time of the crime. The picture was admissible even though the complaining witness candidly pointed out his recollection was that there were five instead of six women in the lineup. The objection goes to the weight rather than the admissibility of the lineup picture.

Defendants' remaining contention goes to the presence of the complaining witness in the courtroom when the defendants were identified by the court in order to assure that they fully understood their jury trial waiver. This was accomplished immediately after defense counsel moved to waive a jury trial and to exclude the witnesses from the courtroom. The motions were made in that order as the first order of business at the opening of the case. The trial court granted both motions as quickly as possible in the order made without objection by defense counsel.

Further, while the record indicates that there was a male witness present in the courtroom at the time of the jury waiver motion which resulted in identification of the defendants, it does not reveal whether that witness was the complaining witness or otherwise identify him. This becomes less important since the record shows that the complaining witness was acquainted with the defendants prior to the events of the offense charged. The record also shows corroborating evidence of the complaining witness' identification of the defendants at the pretrial lineup. In addition,

two police officers identified the three women Parinas was holding at the taxicab.

We find no error in the court's ruling on the motions presented to it or on the admission of evidence. The conviction of each of the defendants was justified on the facts presented and the applicable law.

The judgment against each of the defendants is affirmed.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied March 12, 1970.